**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

THE NUMERO GROUP, LLC,

    Plaintiff/Counterdefendant,

    V.

TUFAMERICA, INC.,

    Defendant/Counterclaimant.

No. 25 CV 9674

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Leonard LaCour is a music producer, songwriter, and performer. In the early 2000s, LaCour assigned the rights to several of his compositions and recordings to TufAmerica in exchange for royalty payments. In 2021, LaCour and TufAmerica amended the prior agreement, expanding the scope to include all of LaCour's music in exchange for some additional payments. Shortly thereafter, however, Numero Group contacted TufAmerica and claimed it had purchased the same copyrights. Numero filed suit to establish that it has a superior claim to LaCour's music and that it did not tortiously interfere with the contractual relationship between TufAmreica and LaCour. TufAmerica brought counterclaims for copyright infringement and tortious interference with contract. Numero now moves to dismiss in part TufAmerica's counterclaims, arguing that the 2021 email exchange did not transfer ownership over many of the disputed works, and that the tortious interference counterclaim is preempted by the Copyright Act. For the reasons discussed below, the motion is granted in part.

## I.    Legal Standards

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).[1] When analyzing the sufficiency of a counterclaim, I construe it in the light most favorable to the counterclaimant, accepting all well-pleaded facts as true and drawing all inferences in its favor. *See Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). My review of a motion to dismiss includes not only the counterclaim itself, but also documents attached to the filing, documents that are critical and referred to in it, and information that is subject to proper judicial notice. *See Muthana v. Mullin*, 171 F.4th 967, 973 (7th Cir. 2026) (quoting *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013)).

Rule 8(a) "does not demand detailed factual allegations, but it does require more than mere 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494–95 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The counterclaim "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 495 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] TufAmerica did not assert its counterclaims in its answer; it filed a separate document labeled "Counterclaim." [13]. (Bracketed numbers refer to entries on the district court docket and referenced page numbers are taken from the CM/ECF header placed at the top of filings.) A standalone counterclaim is not a pleading allowed by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 7(a). Separate counterclaims are not considered pleadings and not subject to procedural rules that refer to pleadings. 5 Wright & Miller's Fed. Prac. & Proc. § 1183 (4th ed.). But since neither party addresses this defect in TufAmerica's filing or argues that the counterclaims should be tested by any standard other than those of Rules 8 and 12, I apply those standards to the counterclaims.

(2009)). Put another way, the counterclaim must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015) (applying the same rules from *Twombly* and *Iqbal* to a motion to dismiss a counterclaim).

## II.      Facts

In 2003 and 2004, Leonard LaCour assigned exclusive copyright interests in certain musical compositions and sound recordings to TufAmerica, Inc. [13] ¶ 6. LaCour conveyed to TufAmerica all rights in those works owned by LaCour and his companies in perpetuity, and appointed TufAmerica the exclusive administrator over all the compositions and recording. [13] ¶ 7. From the execution of those agreements until 2021, TufAmerica released albums containing the transferred works, pursuant to its rights under the agreements. [13] ¶ 8.

In 2021, TufAmerica and LaCour agreed to extend their dealings to grant TufAmerica exclusive copyright interests in additional compositions and recordings. [13] ¶ 9. As part of the extended agreement, TufAmerica agreed to pay LaCour an additional $8,000 up front, and an additional $15,000 over 15 years. [13] ¶ 10; [13-3]. The agreement was memorialized in an email exchange between TufAmerica and Leonard LaCour's son, Leonard LaCour Jr. [13-3].

TufAmerica then released an album entitled "Love-itis" a reissue of an album previously owned and released by LaCour's record label. [13] ¶ 11. In 2022, counsel for Numero contacted TufAmerica about Love-itis, indicating that Numero owned the rights to the works on the album. TufAmerica responded by sending proof of its entitlement to the copyrights. [13] ¶¶ 12–13. Following that exchange, TufAmerica

discovered that Numero released, and continues to distribute, works it acquired the rights to from LaCour. [13] ¶¶ 14–18.

### III.   Analysis

TufAmerica's counterclaim alleges one count of copyright infringement and one count of tortious interference with contract. [13]. Numero moves to dismiss the first count in part, arguing that the 2021 email exchange is not a valid transfer of copyright ownership under 17 U.S.C. § 204, and so TufAmerica has only adequately alleged copyright infringement as to the works listed in the 2003 and 2004 agreements. Numero also moves to dismiss the second count on the grounds that the 2021 email exchange is not a contract that can be tortiously interfered with, and that the claim is preempted by the Copyright Act.

"Normal rules of contract construction are generally applied in construing copyright agreements." *Kennedy v. Nat'l Juv. Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999). That includes applying relevant state contract law. *See id.*; *see also* Restatement of the Law, Copyright, § 28 Tentative Draft No. 3 (2022) ("Unless it conflicts with the Copyright Act, state law governs whether a nonexclusive license has been granted in a particular instance, as well as the interpretation of the terms of an otherwise valid transfer of copyright ownership or nonexclusive license."). Where both the basis for jurisdiction and the substance of the claim are found in federal law, federal common law applies to the choice-of-law determination. *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991). Federal common law follows the Restatement (Second) of Conflict of Laws, which, in the absence of a choice of law provision by the parties, looks to the state with the most

4

significant relationship to the transaction. *Id.* at 782–83; Restatement (Second) of Conflict of Laws § 188 (1971). For the 2021 agreement, that state is Illinois, and so Illinois law fills in any gaps left by federal law.

The Copyright Act requires that transfers of copyright ownership be "in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a).[2] The Act does not, however, define what it means for a transfer to be "in writing and signed," so I look to Illinois law. A signature is "anything which can reasonably be understood to symbolize or manifest the signer's intent to adopt a writing as his or her own and be bound" by the document. *Just Pants v. Wagner*, 247 Ill.App.3d 166, 173 (1993). A signature does not need to be handwritten, and a "sender's name on an e-mail" is sufficient. *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295–96 (7th Cir. 2002).

The 2021 email exchange attached to—and therefore incorporated within—the counterclaim suffices to suggest a transfer of copyright ownership. The email is a writing, and LaCour Jr. manifested his intent to adopt the agreement and be bound by it when he wrote "I Leonard LaCour Jr … have received this email and acting on behalf of Leonard LaCour Sr, … [am] in Agreement of all transactions listed below." [13-3]. That is all the Act requires.

There is some ambiguity as to whether the email exchange is a final agreement or merely a tentative agreement subject to a more definitive document. *See* [13-3]

---

[2] Numero argues that the transfer agreement is invalid because it does not contain a signature of Louis LaCour, Sr., the owner of the copyrights to be conveyed, [18] at 5–6, but § 214(a) allows for the signature of a duly authorized agent.

(stating that "it is agreed to move forward"). "Illinois is averse to enforcing tentative agreements that are expressly contingent on the signing of formal or final documents." *PFT Roberson, Inc. v. Volvo Trucks N. Am., Inc.*, 420 F.3d 728, 731 (7th Cir. 2005). But no part of the agreement was expressly contingent upon further or more formal documents—the closest the exchange gets is saying that it "will not be in force until Lacour receives both $4,000 checks." [13-3]. Even Numero only argues that "it is unclear" whether the author intended for the agreement to be a binding agreement or merely a step towards finalization, [18] at 6, but at this stage, any ambiguity is resolved in favor of TufAmerica.

While LaCour Jr. does not explicitly claim to be his father's "duly authorized agent," I draw the reasonable inference that he was claiming to be such when he said he was "acting on behalf of Leonard LaCour Sr." *See* [13-3]. Numero alleges that LaCour Jr. did not have authority to act on his father's behalf, [1-1] ¶ 12, but that is a factual dispute inappropriate for resolution on a motion to dismiss. *See Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 482 (7th Cir. 2019). Both parties are free to develop a factual record in discovery and make arguments as to the validity of the alleged agreements on motions for summary judgment. At this stage, TufAmerica has adequately alleged the existence of a transfer of copyright ownership, and Numero's motion to dismiss the copyright infringement claim is denied.

While TufAmerica has adequately alleged that the 2021 exchange operates as a valid contract, its tortious interference counterclaim is dismissed because it is preempted by the Copyright Act. Federal preemption is an affirmative defense, but it

can be decided on a motion to dismiss if preemption is conclusively established on the face of the counterclaim. *See Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1040 (7th Cir. 2018).

"[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright … in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright" are preempted by the Copyright Act. 17 U.S.C. § 301(a). That can be distilled down to two elements: "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102. Second, the right must be equivalent to any of the rights specified in § 106." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500 (7th Cir. 2011) (quoting *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 674 (7th Cir.1986)). Under § 106, a copyright owner's rights are "'reproduction, adaptation, publication, performance, and display' of the copyrighted work." *Seng-Tiong Ho*, 648 F.3d at 501.

The parties do not dispute that the first element is satisfied. *See* 17 U.S.C. § 102 (works of authorship include musical works and sound recordings); *Seng-Tiong Ho*, 648 F.3d at 500–01 (first element is satisfied when the material in which the plaintiffs assert rights are expressions in a tangible form); *compare* [18] at 8–9 (arguing preemption applies) *with* [20] at 8–10 (arguing preemption does not apply because the rights asserted are not those specified in § 106, without addressing the first element).

7

As to the second element, the rights asserted are indistinguishable from those specified in § 106. TufAmerica alleges that "Numero intentionally and unjustifiably induced a breach of the Agreements by using, distributing, and selling the Works, thereby depriving Tuf of the exclusive benefits conferred upon it by the Agreements." The wrongful conduct TufAmerica accuses Numero of is "using, distributing, and selling the Works," which is fundamentally the same as publication. *See Publication*, Black's Law Dictionary (5th ed. 1976) (defining "publication" in the copyright context as the "offering or communicating" of a work "to the public by the sale or distribution of copies").

## IV. Conclusion

The Numero Group's motion to dismiss, [18], is granted in part. Count II of the counterclaim, [13], is dismissed. TufAmerica's copyright infringement counterclaim may proceed as to all challenged works.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: May 11, 2026

8